I51dmarc

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    DOMINGO CASTILLO MARCELINO, et
     al.,
4
                     Plaintiffs,              New York, N.Y.
5
              v.                              16 Civ. 6287(KPF)
6
     374 FOOD INC., et al.,
7
                     Defendants.
8
     ------------------------------x
9
                                             May 1, 2018
10                                           3:28 p.m.

11   Before:

12                    HON. KATHERINE POLK FAILLA,

13                                           District Judge

14                              APPEARANCES

15   MICHAEL FAILLACE & ASSOCIATES,P.C.
          Attorneys for Plaintiffs
16   BY:  SHAWN RAYMOND CLARK
          COLIN JAMES MULHOLLAND
17
18   LEHMAN LG LLC
          Attorneys for Defendants
19   BY:  BRIAN EARL LEHMAN
          JULIE ROSENBLUM SOLARZ
20
21
22
23
24
25

I51dmarc

|     |                                                               |
| --- | ------------------------------------------------------------- |
| 1   | THE CLERK:  In the matter of Marcelino versus 374             |
| 2   | Food.  Counsel, please identify yourselves for the record.    |

1    THE CLERK:  In the matter of Marcelino versus 374

2    Food.  Counsel, please identify yourselves for the record.

3    MR. CLARK:  Shawn Clark, of Michael Faillace &

4    Associates, for plaintiff.  Good afternoon, your Honor.

5    THE COURT:  Sir, good afternoon.

6    MR. MULHOLLAND:  Colin Mulholland, with Michael

7    Faillace & Associates.  Good afternoon.

8    THE COURT:  Good afternoon as well.  Thank you.

9    MR. LEHMAN:  Brian Lehman of Lehman LG LLC.

10   THE COURT:  Yes.  Thank you.

11   MS. SOLARZ:  Julie Solarz, Lehman Law Group, for 374

12   Food Inc., et al.

13   THE COURT:  Thank you so much.  OK.

14   Mr. Clark, should I be directing questions to you or

15   to Mr. Mulholland?

16   MR. CLARK:  I can principally answer your questions,

17   your Honor, but Mr. Mulholland may have additional information.

18   THE COURT:  That is fine.  Sir, there seem to be two

19   issues raised in Mr. Lehman's correspondence with me, and one

20   is the issue of disqualification and the other is the issue of

21   the need, or not, for an evidentiary record.  I do understand

22   that you disagree on both parts, but I just want to explore the

23   issues with you a little bit.  And, look, I also understand,

24   just by way of background, you will either agree or disagree

25   with my decision but it is a decision I am not moving from.

3

I51dmarc

1   Given the findings I have made, the question is what do we do

2   now.

3           So, Mr. Clark, what is your view with respect to the

4   issue of disqualification, unless you are just going to rely on

5   your papers?

6           MR. CLARK:  Your Honor, we oppose.  We believe that

7   any potential sanctions are speculative, especially in light of

8   the submission yesterday, which pointed out that defense

9   counsel believes that on the record as it stands there is

10  insufficient evidence for a sanctions finding against counsel.

11  Given that disqualification is itself based on the idea that

12  there could potentially at some point be a --

13          THE COURT:  I will ask you just to slow down, please.

14  Thank you so much.

15          MR. CLARK:  I apologize, your Honor.

16          THE COURT:  No problem, sir.

17          MR. CLARK:  Given that the disqualification motion is

18  itself based on the idea that I believe essentially that any

19  sanction against -- any sanctions motion which affects both the

20  client and counsel could potentially create a conflict, I

21  believe that the concession that the record as it stands does

22  not support sanctions really eliminates the underlying basis,

23  such as it is, for a disqualification motion.

24          In addition --

25          THE COURT:  Yes, sir.

I51dmarc

1          MR. CLARK:  In addition, the plaintiff in this case

2     has been advised of your Honor's opinion and any potential

3     consequences of that opinion, and he still wishes to continue

4     with us as counsel of record.  Given that, and the case law

5     concerning disqualification in the Second Circuit, we believe

6     disqualification isn't appropriate, and at the very least it is

7     an issue that should be briefed given the considerable legal

8     issues underlying the case.

9          THE COURT:  OK.  Let me just probe that with you a

10    little bit, sir.

11         The way I see my finding, I made a finding that

12    Mr. Castillo Marcelino perjured himself, and to my mind he

13    either did it on his own or he did it with your -- I hate to

14    think with your knowledge or with your instigation, and I am

15    worried about figuring out what happened.  You'll excuse me for

16    using the criminal analogue, but in a criminal case sometimes

17    when there is a question about disqualification, there is a

18    hearing where a second attorney is appointed in order to

19    explore conflict issues with the client.  This is -- we just

20    call it a Curcio hearing.  And I'm just wondering if I were

21    able to obtain through the *pro se* office, because it's my

22    expectation that Mr. Castillo Marcelino is without funds at

23    this time to hire another attorney, if I were able to secure

24    someone to speak with him and just sort of give him a second

25    opinion, would there be anything objectionable to that, sir?

I51dmarc

1          MR. CLARK:  I believe so, your Honor, given that he

2     did choose us as his counsel of record.  Disqualification is a

3     severe sanction --

4          THE COURT:  Sir, I want to be clear on what I'm

5     saying.  I'm not saying to disqualify you.  I'm saying to make

6     sure that he just has a second opinion on the various issues

7     raised by the disqualification motion.

8          MR. CLARK:  Your Honor, if I would be able to return

9     to you with an answer on that?  My feeling -- my instinct is

10    that given the speculative nature of the sanctions at this

11    time, I don't think that there is anything really close at this

12    time concerning potential sanctions which I think is concrete

13    enough to create even a potential conflict.

14         THE COURT:  OK.

15         MR. CLARK:  Now, certainly if -- which moves me to my

16    second point, that I do think that there needs to be briefing

17    by Mr. Lehman concerning the questions asked by your Honor

18    before we can meaningfully proceed.

19         THE COURT:  Just him?  I presume you as well?

20         MR. CLARK:  Oh, yes, of course, in response to his

21    briefing.

22         Part of the issue is is that insofar as was raised by

23    defendants' letter in the case --

24         THE COURT:  Which?  The disqualification letter, sir,

25    or the evidentiary letter?

I51dmarc

 1          MR. CLARK:  The evidentiary letter.

 2          THE COURT:  Yesterday's letter.

 3          MR. CLARK:  It is relatively unclear what, you know,

 4    the nature of the sanctions the defendants wish to explore are.

 5    Certainly he has I think correctly noted that he cannot seek

 6    Rule 11 sanctions at this time.  They would need to be sua

 7    sponte sanctions.  He also explored that he doesn't believe

 8    that unless Second Circuit law changes and/or additional

 9    evidence arises, that he can actually seek sanctions under the

10    other section -- another statutory provision.

11          Now, and the additional issue in the case --

12          THE COURT:  Yes, sir.

13          MR. CLARK:  -- as I understand it --

14          THE COURT:  -- yes, sir.

15          MR. CLARK:  Is in addition to the fact that it's still

16    unclear to me precisely the contours of the potential sanctions

17    that defendants are seeking, there is case law, to our

18    understanding, which I think your Honor should potentially

19    review concerning your finding of this client engaging in

20    perjury.  The case in particular that we found is a case called

21    Penthouse International, Limited v. Dominion Federal Savings

22    and Loan Association, 855 F.2d 963.  And in that particular

23    case it had, I think, very similar facts to this one, where a

24    district judge made a finding of perjury after reviewing all of

25    the evidence.  And the Second Circuit's reaction to this was --

I51dmarc

1   and if I may quote it?

2              THE COURT:  You may.

3        MR. CLARK:  "with regard to the perjury finding, we

4   are somewhat surprised by its presence in the Court's decision.

5   If the Court viewed Gorlich's testimony as incredible, that is

6   its prerogative as the trier of fact in a nonjury case.  But

7   unless perjury is at issue in a case, such a finding is not

8   necessary once the trier of fact finds the witness' testimony

9   incredible.  The perjury finding here, however, was not only

10  unnecessary but also was erroneous since it was not based on

11  clear and convincing proof."

12             Now, I think that raises two issues which I think that

13  the Court should address in one way or another.

14             THE COURT:  Mm-hmm.

15        MR. CLARK:  First is the issue of whether the Court

16  could appropriately move on to this question, given it wasn't a

17  necessary element of any claim.  And then the second question

18  is whether or not the Court identified and employed the clear

19  and convincing evidence standard for --

20             THE COURT:  I cited <u>Dunnigan</u> in my decision so I did

21  note the standard.

22             Your first argument is a stronger one, which is that

23  perhaps what I should have done is simply disregard his

24  testimony or credit it as far as I do and leave it at that,

25  without worrying about sanctions.  But in terms of not using

I51dmarc

1    the right standard, oh, no, I knew -- I knew -- the standard

2    that I was using.

3          MR. CLARK:  In which case I do think that there is an

4    additional issue that we would at least like to brief the

5    Court --

6          THE COURT:  Of course.

7          MR. CLARK:  -- concerning that, which I don't believe

8    we had the opportunity to as of yet.

9          THE COURT:  OK.

10         MR. CLARK:  And because of that, in combination with

11   the --

12         THE COURT:  Might I know what that other issue is,

13   sir, please?

14         MR. CLARK:  Excuse me?

15         THE COURT:  Might I know what your other issue is?

16         MR. CLARK:  The issue beyond --

17         THE COURT:  Yes.

18         MR. CLARK:  In terms of the disqualification issue,

19   that I believe any potential sanctions are merely potential at

20   this time.

21         THE COURT:  OK.  I might have misunderstood the very

22   last thing that you were saying and that's because I

23   interrupted you.  It is my recollection, from writing the

24   opinion, that I did include Dunnigan -- the cite to Dunnigan,

25   which is the criminal case, and I do believe I was using clear

I51dmarc

1   and convincing.  I thought I heard you say that that raises

2   another issue.  Are you saying with respect to the

3   disqualification motion or something else, sir?

4              MR. CLARK:  It raises the issue that -- and certainly

5   I think that this comes up in the context of whether or not

6   sanctions are appropriate as to the plaintiff --

7              THE COURT:  Yes.

8              MR. CLARK:  -- particularly, that whether or not there

9   was sufficient evidence to meet that standard based on the

10  facts of the case.  Certainly given, you know, your Honor's

11  opinion and your statement now that you did recognize that as

12  the standard, we certainly will understand and respect that.

13  At the same time, I don't believe that there is any post-trial

14  briefing concerning this issue, and we do think it is germane

15  to the question of whether or not sanctions are appropriate

16  against the plaintiff and, accordingly, would be something that

17  we would address.

18             THE COURT:  So there are two issues.  The first is

19  disqualification, which we have been talking about, and that

20  sort of dovetails into the second, which is the need for an

21  evidentiary hearing.

22             Is it your position, sir, that -- I mean, would you

23  agree with me, and with Mr. Lehman, that right now Mr. Lehman

24  is operating a little bit in the dark because he is not

25  privy -- and I'm not saying he ever will be privy -- to the

I51dmarc

1    communications that you had with your client preliminary to

2    taking the lawsuit and proceeding to trial?

3         MR. CLARK:  Well, certainly I think that we're in the

4    dark, too, to the extent that it's not clear what the theory or

5    nature of the alleged sanctions are.  Without some briefing by

6    him clarifying at least the nature of the sanctions --

7         THE COURT:  OK.

8         MR. CLARK:  -- I don't know how we can reasonably

9    respond or how a hearing is going to effectively address the

10   issues before the Court.

11        THE COURT:  All right.  I think you and I are talking

12   past each other.  Let me say that again.

13        Your point to me is that you're operating with a

14   deficiency of -- without knowledge of the precise legal issues

15   that are being raised by Mr. Lehman but actually that came

16   initially from me.  And what I'm trying to figure out is having

17   found that there was such severe perjury at this trial, what am

18   I to do?  You may say to me, based on the <u>Penthouse</u>

19   <u>International</u> decision that you just quoted from, that I am

20   limited, I am limited to a finding against him.  This is the

21   lies were to me in my capacity as trier of fact and not as

22   judge and I can discredit them, but I can't say that they

23   amount to something warranting additional sanctions.  That's

24   what I understood you to be saying with that citation; yes,

25   sir?

I51dmarc

```
 1              MR. CLARK:  That is a potential argument, your Honor.

 2              THE COURT:  That is a potential argument.  And so to

 3    say you don't know what sanctions Mr. Lehman is seeking is

 4    understandable, but I guess that's also what I'm trying to

 5    figure out.  I'm trying to figure out the rights that I have.

 6    It does appear that I have Rule 11 rights.  I always have, to a

 7    degree, my inherent powers.  There is -- is it 1297 or 1927?  I

 8    always get them confused.

 9              MR. CLARK:  Yes, 1927.

10              THE COURT:  1927, that's specific to the attorneys,

11    correct?

12              MR. CLARK:  Mm-hmm.

13              THE COURT:  And so from my perspective, whatever I

14    have in play is in play.  I believe what Mr. Lehman was

15    saying -- and eventually I will let him speak -- is that in

16    addition to whatever he would want to tell me about how this

17    affected the defendants, one of the specific things he wants to

18    tell me is that the lies told by Mr. Castillo Marcelino

19    regarding Tiran Tsadok were particularly deleterious because he

20    had never met him, he had to come up from Florida for this,

21    there was no reason for him to identify him falsely as the

22    individual with whom he had regular communications at Tribeca

23    Vehicles.  So that's what I was understanding.

24              So I hear your -- your point, sir, is you need to know

25    what the playing field is before you can respond to some of the
```

I51dmarc

1    questions.  I'm just not sure that is the case.  I'm trying to

2    understand -- from my perspective, all sanction avenues are

3    open until you tell me they are closed.

4            Is what you're saying, sir, is that it would be your

5    preference to first decide on a set of sanctions and then

6    decide what evidentiary information would be appropriate for me

7    to decide that issue?  Because right now are we in agreement,

8    sir -- well, I'll ask Mr. Lehman.  Rule 11 doesn't seem to be

9    in play, correct?

10           MR. CLARK:  I would agree that Rule 11 doesn't seem to

11   be in play.

12           THE COURT:  Mr. Lehman, do you think it is?

13           MR. LEHMAN:  It is in play for you, your Honor.

14           THE COURT:  I still have it, OK.  Fair enough.

15           MR. LEHMAN:  Just to clarify, do you mean in play for

16   the plaintiff's counsel or for the plaintiff?

17           THE COURT:  As to both.

18           MR. LEHMAN:  So certainly for plaintiff's counsel and

19   for that one narrow provision of Rule 11, if the plaintiff

20   caused the violation by the plaintiff's counsel, then he can be

21   sanctioned.

22           THE COURT:  OK.

23           MR. LEHMAN:  Generally Rule 11 only speaks to

24   attorneys, but if I advocate evidence and give it to my

25   attorney and he gives it to the court, the court doesn't

I51dmarc

1   sanction the plaintiff's counsel, they sanction plaintiff.

2           THE COURT:  Understood.  OK.

3           So, Mr. Clark, it seems like from Mr. Lehman's

4   perspective all avenues are open.

5           MR. CLARK:  Well --

6           THE COURT:  Would you like first to respond to more

7   robust briefing on sanctions and then on the hearing, or not,

8   that is necessary?

9           MR. CLARK:  Really --

10          THE COURT:  Mr. Mulholland.  Yes.

11          MR. MULHOLLAND:  I think the main concern the

12  plaintiff has right now is that there has been an order by the

13  Court and there has been two submissions by Mr. Lehman.

14          THE COURT:  Yes.

15          MR. MULHOLLAND:  The plaintiff would like an

16  opportunity to brief and respond to all of those allegations in

17  writing, complete with case law, prior to any decision being

18  made on either the disqualification or the evidentiary hearing.

19          THE COURT:  Well, then to my earlier question, are you

20  asking that I accept Mr. Lehman's invitation that this be a

21  letter in furtherance -- a premotion letter and that there be a

22  more detailed motion from him regarding sanctions and/or the

23  need for an evidentiary hearing, to which you may respond with

24  more detail and more case law?

25          MR. CLARK:  If my understanding is that if this is

I51dmarc

```
1    interpreted as a premotion letter and this is simply added to

2    the other arguments already expected by your Honor in

3    defendants' briefing, I would agree with that.  I think that

4    you can deal more fully with the issue after it is briefed in

5    tandem with the other issues.

6              THE COURT:  One moment.

7              Off the record.

8              (Pause)

9              THE COURT:  All right.  Thank you.

10             Counsel, my point is this.  It is not often -- indeed,

11   it's hardly ever that I make the findings that I make in the

12   opinion that I made.  I don't go inviting sanctions

13   applications.  This is very serious to me.  I want everyone's

14   best ideas as to what I can do and what I should do.

15             So, from your perspective, sir, how can I get the very

16   best information about what I can and what I should do?

17             MR. CLARK:  I do believe that briefing is appropriate.

18             THE COURT:  OK.

19             MR. CLARK:  And then based on that briefing, which can

20   include more clear articulation of the need, or lack thereof,

21   of a hearing, and then based on that written briefing determine

22   whether a hearing is necessary.

23             THE COURT:  Simultaneous or responsive?

24             MR. CLARK:  I would say responsive with really the

25   same framework that your Honor crafted in the opinion.  I'm
```

I51dmarc

1    certainly happy to give defense counsel an extension of time,

2    as he requested in his letter.  And as long as I think that we

3    get like 30 days to respond from the date of defense counsel's

4    submission, I think we would be open to that.

5         THE COURT:  OK.  Mr. Lehman, let me please hear from

6    you, sir.  Thank you for your patience.

7         MR. LEHMAN:  With regard to the plaintiff, it is not

8    speculative that he will be sanctioned of some sort.

9         THE COURT:  It is my expectation but we'll see.  They

10   may persuade me through this <u>Penthouse</u> case --

11        MR. LEHMAN:  Right.

12        THE COURT:  -- that I am limited or I should limit

13   myself simply to not accepting his testimony.  I'm not -- we'll

14   see.

15        MR. LEHMAN:  So if one were to assume for the sake of

16   argument that that's going to happen, or it has some percentage

17   chance, then the only question after that is how much.  One

18   dollar?  A thousand?  10,000?  50,000.  It could get high.

19   There is some case law out there that has people compensate the

20   court for its time, and given the average district court is

21   about like 1.1 million a year for the security in the building,

22   the numbers I've seen are somewhere between 300 and a thousand

23   dollars an hour.  So multiplied by the hours, it could get

24   significant for the plaintiff.

25        That part is not speculative.  Regarding the briefing

I51dmarc

1    on plaintiff's counsel, I don't know that I can give briefing

2    for what I think should happen.

3          THE COURT:  I'll ask the question differently.

4          MR. LEHMAN:  Sure.

5          THE COURT:  To the extent I construe your

6    submissions -- which really did provoke some thought, so I do

7    thank you for them -- as premotion submissions, do you have

8    more to give me?  If the answer is no, if the answer is this is

9    everything you've got --

10         MR. LEHMAN:  On disqualification, yes.

11         THE COURT:  On sanctions?

12         MR. LEHMAN:  Oh, I'm sorry.

13         THE COURT:  On both.  I'll take both.

14         MR. LEHMAN:  So on disqualification, yes, I have more

15   to give you.  I could fully brief that.

16         THE COURT:  OK.

17         MR. LEHMAN:  One issue that I only saw yesterday

18   afternoon and started researching today was under Rule 3.3 of

19   the New York Code of Professional Conduct, which is modeled

20   after the ADA -- and, again, I only saw this yesterday when

21   doing the letter for you.

22         THE COURT:  Yes, sir.

23         MR. LEHMAN:  The lawyers are required to remedy false

24   statements to the Court.

25         In addition, under Rule 1.6, attorney-client privilege

I51dmarc

doesn't apply at that point.  So after a trial, if they

knowingly -- it says, Rule 3.3(a):  "If a lawyer, the lawyer's

client, or a witness called by the lawyer, has offered material

evidence and the lawyer comes to know of its falsity, the

lawyer shall take reasonable remedial measures, including, if

necessary, disclosure to the tribunal."

           And there are other provisions that I would brief on.

           THE COURT:  Yes.  Although Mr. Clark and

Mr. Mulholland may take the view that even though I decided as

I decided, I'm wrong and there is no information to correct.

But that's for another day.

           Do you believe that you could write a longer brief

that discusses both the disqualification and the sanctions

points without an evidentiary hearing but perhaps identifying

things that would be useful to you?

           MR. LEHMAN:  I do believe that I can do it for

disqualification.

           THE COURT:  OK.

           MR. LEHMAN:  And I do believe that I could do it for

sanctions for the plaintiff with the caveat that he may not be

responsible for everything here.

           THE COURT:  Understood.

           MR. LEHMAN:  So I would just be assuming that he is a

hundred percent responsible for everything.

           On the third, I could not give additional briefing on

I51dmarc

```
1   what should be done with plaintiff's counsel, if anything.

2            THE COURT:  Understood.  Is there more that you can

3   tell me about the information you believe that I should be

4   looking at in deciding what to do with respect to plaintiff's

5   counsel?  And if not, that's fine.

6            MR. LEHMAN:  I thought the idea of a second attorney

7   was a good one.  It's one that I would -- if a second attorney

8   came and said, yeah, I talked to him independently, told him

9   what's going on, and he said I'm good with this --

10           THE COURT:  If that were the case, would you then

11  withdraw your disqualification?

12           MR. LEHMAN:  I believe I would.  I believe 90 percent

13  chance I would.  I would want to look at 3.3 a little bit more,

14  but a strong presumption is if a lawyer independently talks

15  with this gentleman and says this is what's going on and he

16  says these are my attorneys, I'm much more comfortable with it.

17           THE COURT:  OK.  It sounds like from that answer,

18  though, that I should refrain from setting a briefing schedule

19  on anything further until I hear from Mr. Clark and

20  Mr. Mulholland as to their views with respect to the

21  appointment of a second counsel.

22           MR. LEHMAN:  I would agree.

23           THE COURT:  Mr. Clark.

24           MR. CLARK:  Just to clarify --

25           THE COURT:  Yes, sir.
```

I51dmarc

1      MR. CLARK:  -- because I feel like we are talking

2  about a few different issues.

3      THE COURT:  We absolutely are, yes.

4      MR. CLARK:  My understanding from your Honor's

5  position was that there would be someone from the *pro se* office

6  who would talk to the plaintiff concerning the issues.

7      THE COURT:  Yes.

8      MR. CLARK:  And not necessarily that they were second

9  counsel or co-counsel.

10      THE COURT:  That is in fact what I was thinking, sir.

11      Let me say that again.  I would ask Ms. Malloy, at the

12  *pro se* office, to find an attorney to represent Mr. Castillo

13  Marcelino on a limited purpose basis, to show -- to just talk

14  to him about my decision and what issues might arise from that

15  and whether or not he wishes to continue with you as his

16  counsel in light of my decision.  And were I new counsel, I'd

17  like at my decision and I'd look at the letters preliminary to

18  this conference and I'd advise him accordingly.

19      And if Mr. Castillo Marcelino wanted to stay with you

20  as counsel, then great.  If he wished to do something else,

21  then we'll deal with that.  But I believe what Mr. Lehman is

22  saying is he has a longer disqualification motion to write but

23  it's not worth writing if, with the assistance of a second

24  attorney, or having consulted with a second attorney,

25  Mr. Castillo Marcelino stays with your firm.

I51dmarc

1          MR. CLARK:  OK.  I just wanted to make sure that that

2     is confirmed, because I heard something along the lines of

3     there is a 90 percent chance that if this process is followed

4     that there will be no disqualification motion.

5          THE COURT:  Yes.  What he said was that he wanted to

6     look at Rule 3.3 and see if that impacted the matter.

7          MR. CLARK:  I would like to hear from Mr. Lehman what

8     his views are, because if we are going to end up doing a

9     disqualification motion no matter what, I think that we could

10    move forward with the disqualification motion.  Certainly at

11    this point I don't believe that there is a strong background to

12    it.  However, given, you know, this process that your Honor

13    suggested, I would very seriously consider using it if it was a

14    way to avoid longer motion practice.  If, however, it's merely

15    a dress rehearsal for longer motion practice, I'm much less

16    likely to consider it seriously.

17         THE COURT:  OK.  By which you mean dress rehearsal on

18    the issue of disqualification.  It obviously doesn't obviate or

19    even pertain to the sanctions issue.

20         MR. CLARK:  They are distinct issues.

21         THE COURT:  Indeed.

22         Would each of you like some period of time to go home,

23    think about it, and tell me, you, sir, whether you are inclined

24    to do it conditionally, Mr. Clark, and you, Mr. Lehman, whether

25    a review with a second attorney that resulted in Mr. Castillo

I51dmarc

1   Marcelino sticking with counsel, with Mr. Clark and

2   Mr. Mulholland, would obviate the need for a disqualification

3   motion?

4            Shall I say that again?

5            MR. LEHMAN:  Sure.

6            THE COURT:  OK.  The question on the floor is whether

7   anyone is aided by having a second attorney that has nothing --

8   no horse in the race speak with Mr. Castillo Marcelino and

9   discuss with him, I believe, my opinion and the letters

10  preliminary to this conference and anything else they wish to

11  talk about.  If after discussions with that attorney,

12  Mr. Castillo Marcelino wishes, for example, to stay with that

13  attorney for the remainder of this case, or to get new counsel,

14  then the disqualification motion is obviated because he's

15  electing to go with someone else.

16           Agreed, Mr. Clark?

17           MR. CLARK:  Yes.  I believe that that was correct.  I

18  missed a little bit at the end.  My apologies.  I was having a

19  side conversation.

20           THE COURT:  I saw that.  Let me say it slower again.

21           MR. CLARK:  My apologies.

22           THE COURT:  If after consultation with this second

23  attorney Mr. Castillo Marcelino elects to go with that attorney

24  or someone else, we no longer need a disqualification motion

25  because he will leave you, he will get a new attorney.  Agreed?

I51dmarc

1          MR. CLARK:  Well, yes.  That would be functionally

2     that we were disqualified.

3          THE COURT:  However -- OK.  The issue is the next part

4     of the other fork in the road, which is if, after meeting with

5     this attorney and having what I believe to be an appropriate

6     discussion with that attorney, he elects to stay, to keep you

7     as his counsel, I'm asking Mr. Lehman if there is a basis for a

8     disqualification motion.  What Mr. Clark is saying is it's

9     hardly worth the effort of the consult with the second attorney

10    if we're just going to have to have this motion anyway.  I

11    might disagree with that but I'm asking for your thoughts, sir.

12         MR. LEHMAN:  I will withdraw my motion or my premotion

13    letter to disqualify Mr. Clark and Mr. Mulholland and their law

14    firm if an independent lawyer talks with the plaintiff about

15    all the legal issues that could arise and the plaintiff decides

16    to stay with that law firm, I will withdraw my motion to

17    disqualify.  That does -- and I will withdraw -- I withdraw it.

18         Second, perhaps not, moving forward, if new facts

19    arise that I can't even imagine, then I might do it.  I also

20    say, this is not -- I don't have too much of a dog in this

21    particular fight.

22         THE COURT:  Yes.  You're trying to stave off a Second

23    Circuit reversal.

24         MR. LEHMAN:  And, frankly, some courtesy towards a

25    person who might not be as advantaged as I have and it is now

I51dmarc

1    getting serious.  And I intend to treat it seriously, but I'm

2    fine; if he wants to stay with him after talking to him, so be

3    it.

4              THE COURT:  OK.  Mr. Clark.

5              MR. CLARK:  As I stated earlier, I would want a short

6    period of time.  I can get back to the Court within 48 hours,

7    if that is OK?

8              THE COURT:  Yes.

9              MR. CLARK:  To talk to the client and ensure that he

10   is also open to going through that procedure.

11             THE COURT:  I assume that you will be dispassionate in

12   your discussion of that procedure --

13             MR. CLARK:  Certainly, your Honor.

14             THE COURT:  -- with your client?

15             If you agree to that procedure, may I understand that

16   I may speak with Ms. Malloy about the parameters of what this

17   new counsel is being asked to do?

18             MR. CLARK:  And that is the Pro Se Clerk, correct?

19             THE COURT:  Indeed.

20             MR. CLARK:  I don't have any objection to that, your

21   Honor.

22             THE COURT:  OK.  Mr. Lehman, no objection to my

23   speaking --

24             MR. LEHMAN:  No objections, your Honor.

25             THE COURT:  I don't think that I would be speaking to

I51dmarc

1   the attorney him or herself, I think I would be just channeling

2   things through the *pro se* office.  I don't think it is

3   appropriate for me to speak to the attorney.  That is the

4   current contemplation.

5           MR. CLARK:  Understood.

6           THE COURT:  OK.  Then let's do that.  I don't want to

7   delay this.  Neither do you.  You want resolution.  So do I.

8   But I care more that everyone is treated fairly.

9           I will work with the *pro se* office to see if someone

10  can be secured.  As I'm doing that, you will tell me your views

11  on it.  If it turns out that you disagree, then I'll set a

12  briefing schedule for the disqualification motion.  And I think

13  we'll just do that one first, and that will inform the size of

14  any other motion.

15          It's unfortunate that we can't get things done more

16  quickly but this is -- again, we're trying to be fair and

17  correct here, so let's do that.

18          Mr. Clark, with that in mind, is there anything else

19  we should be addressing today, sir?

20          MR. CLARK:  Certainly in terms -- my understanding at

21  this point is we're addressing the disqualification issues

22  first.

23          THE COURT:  Exactly right, sir.

24          MR. CLARK:  We have not set a timetable as to

25  submissions concerning the Court's questions?

I51dmarc

```
 1           THE COURT:  We have not because I can't tell you how
 2  quickly I can get someone who would wish to represent
 3  Mr. Castillo on so unique a limited purpose representation, and
 4  you still haven't told me that you agree to it.
 5           MR. CLARK:  Understood.
 6           THE COURT:  Mr. Mulholland.
 7           MR. MULHOLLAND:  At this point we have to talk to
 8  Marcelino.
 9           THE COURT:  I understand that, sir.
10           MR. MULHOLLAND:  I wonder, as an alternative, if we
11  could brief Marcelino as to whether he could come to court for
12  a brief limited purpose hearing for the Court to the give him
13  advisos --
14           THE COURT:  A civil Curcio hearing?
15           MR. MULHOLLAND:  Yes.  I don't know if that is an
16  option.
17           THE COURT:  I don't know that that is an option.  I
18  don't know.  I would be concerned that I would be perceived as
19  giving him legal advice, which is not something I want to do.
20  I also don't want you to later on say that the judge who is
21  considering sanctions is the one who is talking to him about
22  what he should do.  I haven't thought that through yet, sir, so
23  I will think that through.  I will let you think it through as
24  well.
25           MR. MULHOLLAND:  Yes.  Thank you.
```

I51dmarc

1           THE COURT:  Thank you.

2           OK.  Mr. Lehman, anything else today, sir?

3           MR. LEHMAN:  Nothing, your Honor.

4           THE COURT:  All right.  Thank you all very much for

5   coming in.  Thank you for your patience.  I will hear from you

6   as soon as I can hear from you.

7           MR. CLARK:  Thank you, your Honor.

8           THE CLERK:  All rise, please.

9           (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25