UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
DOMINGO CASTILLO MARCELINO,
*individually and on behalf of others*
*similarly situated*,

                                        16 Civ. 06287 (KPF)

               *Plaintiff*,

      --against--

374 FOOD INC., HAYIM TSADOK and
TIRAN TSADOK,

               *Defendants*.
-------------------------------------------------------X

REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISQUALIFY MICHAEL ROSS AND EUGENE GORMAKH
<u>FROM APPEARING FOR MICHAEL FAILLACE IN THIS CASE</u>

Brian Lehman
Lehman LG LLC
244 Fifth Ave., B258
New York, New York 10001
*Counsel for Defendants*

Defendants 374 Food Inc., a company doing business as a bodega named Tribeca Bagels, Tiran Tsadok and Hayim Tsadok respectfully submit this reply memorandum of law in support of their motion (Dkt #95) to disqualify Michael Ross from appearing in this case to represent counsel for Plaintiff, Michael Faillace.[1]

Defendants' motion raises an important issue that no court has ever resolved concerning the authority of federal courts to admit attorneys under a statute that traces its origins to the Judiciary Act of 1789:  May an attorney appear in a case to represent counsel that is representing a party because the party's counsel may be facing sanctions?

Michael Ross argues that he has made such appearances "without issue" for the last fifteen years in federal court in his "Affirmation in Opposition to Motion to Disqualify." Dkt. #98 ¶8. Mr. Ross then provides citations to four dockets in the Southern District of New York, Dkt. #98 ¶7, and describes other cases where he has made such appearances, Dkt #98 ¶¶ 8-9. Mr. Ross's affirmation is not persuasive and Defendants' motion to disqualify Mr. Ross should be granted for three reasons.

**First**, Mr. Ross failed to file a memorandum of law. This failure is a sufficient basis for this Court to grant Defendants' motion. **Second**, Mr. Ross cannot overcome the plain language of Section 1654 of Title 28 of the United States Code. Section 1654 states "the parties" are allowed to conduct their cases "by counsel." 28 U.S.C. § 1654.  **Third**, even if one assumes that a federal statute or the Constitution provided authority to this Court to allow Mr. Ross to appear and represent Plaintiff's counsel, the Court should still disqualify Mr. Ross to "preserve the integrity of the adversary process." *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979).

---

[1] Defendants also move to disqualify Eugene Gormakh but, for the ease of reading, this memorandum of law focuses on Mr. Ross.

1

## I.       MR. ROSS FAILED TO FILE A MEMORANDUM OF LAW AS REQUIRED

Rule 7.1 of the Local Rules is entitled "Motion papers."[2] It states: "all motions shall include the following motion papers" and lists (1) a "notice of motion," (2) a "memorandum of law," and (3) supporting "affidavits and exhibits." Local Rule 7.1(a)(1)-(3). Local Rule 7.1(b) states "all oppositions and replies with respect to motions shall comply with Local Civil Rule 7.1(a)(2) and (3) above." *Id.*

Mr. Ross only submitted an affirmation. *See* Dkt. #98. "An affirmation alone will not satisfy the requirements of Rule 7.1." *Microsoft Corp. v. K E Computer Inc.*, No. 00 Civ. 7550, 2001 WL 332962, at *1 (S.D.N.Y. Apr. 4, 2001); *see also Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. R & C Transit, Inc.*, No. 16 Civ. 2481, 2018 WL 794572, at *3-4 (E.D.N.Y. Feb. 7, 2018) (collecting cases); *Wenzhou Wanli Food Co. v. Hop Chong Trading Co.*, 2000 WL 964944, at *3 (S.D.N.Y. July 11, 2000); *East 65 Street Realty Corp. v. Rinzler*, 2000 WL 303279, at *3 (S.D.N.Y. Mar. 22, 2000) (same).

"Failure to file a memorandum of law in opposition to the opposing party's motion is, by itself, a sufficient basis to grant the motion." *Kamara v. United States*, No. 04 Civ. 626, 2005 WL 2298176, at *1 (S.D.N.Y. Sep. 20, 2005); *see also Assets Recovery 23, LLC v. Gasper*, No. 15 Civ. 5049, 2017 WL 3610568, at *3 (E.D.N.Y. July 25, 2017), report and recommendation adopted, 2017 WL 3610517 (E.D.N.Y. Aug. 21, 2017); *Cea v. Access 23 TV*, No. 11 Civ. 3791, 2015 WL 5474070, at *1 (S.D.N.Y. Sept. 15, 2015).

Mr. Ross affirms that he over thirty years of experience as an attorney and states: "I have represented lawyers in Federal Court matters for at least 15 years." Dkt. #98 ¶2. His failure to file a memorandum of law is not an inadvertent slip by inexperience counsel only familiar with

---

[2] Local Rules of the United States District Courts for the Southern and Eastern Districts of New York *available at* http://www.nysd.uscourts.gov/rules/rules-2018-10-29.pdf

New York courts. In fact, Mr. Ross has filed a memorandum of law in opposition to a motion less than one ago in this Court. *See* Exhibit 1.[3] Mr. Ross cites this very case in his affirmation, so it is clear that Mr. Ross not only knows of Local Rule 7.1 but also has recently followed it.

Thus, the only reason that Mr. Ross failed to comply with Local Rule 7.1 is simple: There is no law to put in a memorandum of law. There is no statute and there are no opinions that have held counsel may appear in a case to represent an attorney who is representing a party. The most that Mr. Ross can muster are half a dozen or so citations to docket entries where he appeared in the case and no one raised an objection. But these are just documents of which the court might take limited judicial notice of the fact that Mr. Ross has past appearances. Docket entries are a far cry from law, which of course is why Mr. Ross does not have a memorandum of law.

The burden is on Mr. Ross to provide some statutory or constitutional authority allowing him to appear in this case to represent Plaintiff's counsel. Mr. Ross's failure to submit a memorandum of law, much less refer to any law, is reason alone for this Court to grant Defendants' motion to disqualify him.

## II.   NO STATUTE PERMITS MR. ROSS'S APPEARANCE IN THIS CASE

Putting to one side Mr. Ross's failure to follow the Local Rules, there is another reason why he cannot appear to represent Plaintiff's counsel:  The plain language of 28 U.S.C. § 1654. As Chief Justice John Roberts once noted, Felix Frankfurter taught three rules of statutory interpretation at Harvard Law School: "'(1) Read the statute; (2) read the statute; (3) read the statute!'" *In re England*, 375 F.3d 1169, 1182 (D.C. Cir. 2004) (quoting HENRY J. FRIENDLY, BENCHMARKS at 202 (1967)). Mr. Ross has not followed any of these rules.

---

[3] Exhibit 1 is attached to Affirmation by Brian Lehman at 3-4 ("Lehman Aff.") (cover page and signature page to memorandum of law in opposition signed and filed by Michael Ross in *Lawrence v. City of New York*, No. 15 Civ. 8947 (S.D.N.Y.)).  Lehman Aff. is numbered Page __ of 12 in the lower right hand corner and contains three exhibits.

Section 1654 reads:

> Appearance personally or by counsel. In all courts of the United States *the parties* may plead and conduct their own cases personally or *by counsel* as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

28 U.S.C. § 1654. (emphasis added). Section 1654 has its origin in Section 35 of the Judiciary Act of 1789, stating "in all courts of the United States, the parties may plead and manage their own causes personally or by the assistance of counsel." 1 Stat. 73, 92.

Congress has passed some complicated statutes but Section 1654's forty-one words are not hard to understand: The *parties* may have counsel. As Mr. Ross stated under penalties of perjury, "Mr. Faillace is not a party." Dkt. #98 at 2 n.1. Therefore, Mr. Ross may not appear as counsel for Mr. Faillace.

While the text of the statute is as clear as sunlight, it bears taking note of the Local Rules. Local Rule 1.3 states:

> . . . . Only an attorney who has been so admitted or who is a member of the bar of this Court *may enter appearances for parties*, sign stipulations or receive payments upon judgments, decrees or orders.

*Id.* (emphasis added). Local Rule 1.4 states:

> Withdrawal or Displacement of Attorney of Record. An attorney who has appeared as attorney of record *for a party* may be relieved or displaced only by order of the Court and may not withdraw from a case without leave of the Court granted by order.

*Id.* (emphasis added). Attorneys may appear for a parties, and Mr. Faillace is not a party.

Nor is it of consequence that PACER allows for "miscellaneous" parties to appear in a case. See Exhibit 3, Lehman Aff. at 12 (showing Michael Faillace is a "misc" party on PACER).[4] The Federal Rules recognize miscellaneous proceedings that are not civil actions but still involve

---

[4] For convenience, a copy of Exhibit 3 is also attached at the end of this brief. Mr. Ross clearly filed and inappropriately Mr. Faillace, who is not a party, as a miscellaneous party on PACER.

disputes between two parties. *Compare* Fed. R. Civ. P. 1 ("These rules govern the procedure in all civil actions and ***proceedings*** in the United States district courts . . . ") (emphasis added) *with* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."); *see also Sellman v. United States*, No. 12-mc-31, 2013 WL 6229172, at *2 (S.D. Ind. Dec. 2, 2013).

For example, people subpoenaed by a party may wish to file a motion to quash under Fed. R. Civ. P. 45(d)(2)(B), (f), (g), in which case those people initiate a "miscellaneous" proceeding identified with a case number "mc" as opposed to "cv."[5] Given that there are miscellaneous proceedings, it is hardly surprising that PACER allows attorneys to input information about the miscellaneous *parties* and file notice of appearances on their behalf.

What is surprising is that Mr. Ross has used PACER to appear on behalf of attorneys and presents these instances as the reason why he should be allowed to appear here. Although with respect to this point, it should be noted that when Mr. Ross first started this practice of appearing to represent counsel in a case, he filed the notice of appear in PACER under the party's name and then type-in that he was attempting to represent the law firm

> NOTICE OF ATTORNEY APPEARANCE: **Michael Steven Ross appearing for Michael Binday**. Appearance Type: Retained. *Appearance for Steptoe & Johnson LLP*, **counsel for defendant Michael Binday** (Ross, Michael) (Entered: 03/11/2013).

Exhibit 2 attached to Lehman Aff. at 10 (bold added above) (docket entry 118 in *Binday* referred to in Mr. Ross's affirmation found at Dkt #98 ¶2). (italics in original on PACER as originally

---

[5] Given Rule 2's definitional statement that "There is one form of action—the civil action," Fed. R. Civ. P. 2, the term "miscellaneous action" for such proceedings is unfortunate nomenclature. *See In re MTBE Prods. Liab. Litig.*, 517 F.Supp.2d 662, 665 n.7 (S.D.N.Y. 2007) (citing Bradley Scott Shannon, *Action Is an Action Is an Action Is an Action*, 77 WASH. L. REV. 65 (2002) (discussing the importance of the proper use of terminology in the Federal Rules of Civil Procedure and the definitions of action, claim, averment, paper, dismissal, and judgment)). They are merely miscellaneous proceedings.

added by Mr. Ross). The docket lists Mr. Ross representing the party, Mr. Binday. *See* Exhibit 2, Lehman Aff. at 7 (yellow highlights on exhibit added by Defense counsel).

Mr. Ross's sole argument for why he may appear in this case to represent Mr. Faillace is that he has "represented lawyers in Federal Court matters for at least 15 years." Dkt. #98.  This is the weakest sort of argument: Mr. Ross is arguing that he can appear in this case because he has done so before. It is hard to give much credit to something that Mr. Ross has single-handedly created out of his personal practice of last fifteen years.[6]

Federal courts sometimes permit a practice until it is argued that there is no statute giving the federal court that authority. Consider *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998), where the Supreme Court unanimously reversed a well-accepted practice in federal courts once it was challenged. Before the Supreme Court's decision, parties routinely argued that multi-district litigation ("MDL") cases transferred to a district court for pre-trial purposes should be kept for trial in that district court. For over twenty five years, beginning with *Pfizer, Inc. v. Lord*, 447 F.2d 122 (2d Cir. 1971), courts allowed parties to "self-transfer" a case as a routine part of the MDL process.

Then – despite scores of judicial opinions from district courts and courts of appeal permitting the practice – one judge argued in a dissent that Congress had not passed a statute giving the district court authority to self-transfer MDL cases. *See In re Am. Continental Corp.*, 102 F.3d 1524, 1540-50 (9th Cir. 1996) (dissent from panel's opinion). Despite lacking a circuit split, the Supreme Court granted the petition for writ of *certiorari* and unanimously reversed. *See Lexecon*, 523 U.S. at 43. As the dissent had argued below, "a practice unsupported by thoughtful analysis . . . surely is entitled to little weight." *In re Am. Continental*, 102 F.3d at 1549.  The

---

[6] Given Mr. Ross's familiarity with this area of law, the natural question is whether he can point to *another* attorney outside his firm who has appeared on behalf of a lawyer, rather than a party?

lesson of *Lexecon* is that federal courts must be vigilant about their sources of authority, and unexamined practices cannot and should not be sustained unless a statute or the Constitution gives such authority to the federal court.

There is no freestanding right to have an attorney represent a person who is not a party. For example, "counsel for a nonparty witness does not have a right . . . to participate in a pretrial deposition" or the trial. *Thompson v. Mather*, 894 N.Y.S.2d 671, 672 (N.Y. App. Div. 2010). This is true even though the nonparties may disclose information detrimental to their interests. An attorney, if allowed to participate in the deposition or trial, might be preferable to no attorney for the nonparty because the attorney could help guide what information is disclosed and certainly might know the law better than the nonparty and therefore be able to object.

Prior to *Thompson*, *supra*, counsel for non-party witnesses was common. *See David Paul Horowitz, May I Say Something?*, N.Y. ST. B.J. July/Aug. 2011, at 82 (explaining that the decision in *Thompson*, *supra*, "represents a sharp break from day-to-day deposition practice, pre-*Thompson*, where attorneys representing nonparty witnesses traditionally exercised all of the rights available to party attorney"). Counsel could have argued that lawyers had represented non-parties before "without issue" thousands, if not tens of thousands, of times.

The problem is that there is no statute that permits counsel for a nonparty. *See Thompson*, 894 N.Y.S.2d at 672. Thus, the practice was not permissible.

By way of another example, there is no right to counsel within the grand jury room and the U.S. Attorney in this District commonly may charge people for false statements before a grand jury. *See* 18 U.S.C. § 1623. The assistants representing the United States in this District are no-nonsense, skilled attorneys. Defense lawyers, including Rudy Giuliani (a former U.S.

Attorney for the Southern District of New York) have even complained that when prosecutors question witnesses, "perjury traps" are set.[7]

At the very least, the prosecutor in the grand jury room is the initial arbiter in deciding whether to charge an individual with false statements. Making statements to a grand jury can be particularly fraught and stressful as it may lead to criminal charges that disrupt one's life for years until a jury renders its decision. *See, e.g.*, *United States v. Awadallah*, 349 F.3d 42, 48 (2003) (recounting facts where the U.S. Attorney for this District filed charges against person for making false statements to the grand jury and district court rejected "perjury trap" argument as a reason for dismissal); *see also* Carla Baranauckas and Matt Sweeney, "Man Acquitted in 9/11 Perjury Case," N.Y. TIMES (Nov. 17, 2006) (noting a jury deliberated for an hour until a not guilty verdict on perjury charges, which had been pending for five years) (available online). If there were ever a time outside of a criminal trial that a person would want an attorney by their side, it would when testifying in a room before a grand jury investigating a crime. *See, e.g.*, Marshall F. Newman, *The Suspect and the Grand Jury*, 11 U. RICH. L. REV. 1, 19 (1976).

But there is no such right to have counsel before a grand jury. *See United States v. Scully*, 225 F.2d 113, 116 (2nd Cir. 1955). In light of this well-established law, it is not feasible to argue that the Sixth Amendment to the U.S. Constitution gives Mr. Faillace the right to have counsel appear in this case and speak for him on the ground that Mr. Faillace may face sanctions for his own or his firm's malfeasance.[8] And, as discussed above, no statute provides that authority.

---

[7] *See* Karen Freifeld, "The Mueller Interview That Wasn't: How Trump's Legal Strategy Paid Off," REUTERS (March 26, 2019) *available at* https://www.nytimes.com/reuters/2019/03/27/us/politics /27reuters-usa-trump-russia-interview-insight.html.

[8] Of course, a person in criminal or civil contempt may not be sentenced to a term of *imprisonment* unless he was afforded the right to counsel *at the contempt proceeding*. *See Argersinger v. Hamlin*, 407 U.S. 25 (1972); *In re Rosahn*, 671 F.2d 690, 697 (2d Cir. 1982); *In re Di Bella*, 518 F.2d 955 (2d Cir. 1975).

**III.    THIS COURT SHOULD DISQUALIFY MR. ROSS TO PRESERVE THE INTEGRITY OF THE ADVERSARY PROCESS**

Finally, this Court should disqualify Mr. Ross in order to "preserve the integrity of the adversary process." *Board of Educ. V. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979); *see also Hempstead Video v. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005). There is no question as to "why Dale Carnegie never listed" the adversary process as a method "for winning friends and influencing people." William H. Rehnquist, *The Adversary Society*, 33 U. *Miami L. Rev.* 1, 15 (1978). "During an adversary hearing, the question before the court is simply whose rights have been infringed and what damage has been caused by the infraction." *Id*.

To borrow from *Berger v. United States*, 295 U.S. 78 (1935), during the adversary process, attorneys may not strike foul blows – but they may strike hard ones. Attorneys may not employ improper methods – but they should use legitimate means to wholeheartedly represent their client. The federal courts rely on attorneys to act in this manner under their duty of loyalty to their clients, so that the court might justly resolve the dispute.

By all accounts, Plaintiff is an immigrant who does not speak English as his first language and Plaintiff may well have entered the United States, and thereafter remained, by unlawful means. Having found work at a bodega in the City, Plaintiff sued his employer and then knowing lied to this Court after having taking an oath to tell the truth. Plaintiff's sole purpose in lying to this Court, lying repeatedly and without shame throughout the trial while he sat within arm's length of the presiding judge, was to extract or otherwise extort from Defendants far more money than was owed to him under federal or state law. Plaintiff sought $77,020.50 for eight months of work – with, of course, attorneys' fees that must be imposed and a 9% prejudgment interest so long as Defendants did not settle prior. Plaintiff had worked less than five weeks at Tribeca Bagels, which the corporate defendant conceded along with liability from the beginning.

Plaintiff thereby caused this Court to exercise its power – power back by the services of the United States Marshalls who may arrest and detain any person that disobeys this Court's orders.[9] The Court used its power to haul, over the requests of the undersigned, an elderly man living peaceable in Florida so that he might appear as a defendant at trial only to hear that this elderly man did not know Plaintiff and Plaintiff did not know him.

As attorney for Defendants, counsel has the duty to zealously represent them. As a citizen, the undersigned may well feel that Plaintiff should face the consequences of his odious conduct in a court, and country, founded on the rule of law.

But as an officer of the court, the undersign cannot concede that opposing counsel, who must zealously represent the interests of Plaintiff in an adversary process designed to produce justice with due process, may insert his own attorney into this Court's proceedings to speak on counsel's behalf while refusing to withdraw from representing that Plaintiff. Mr. Ross's representation of Mr. Faillace undermines the adversary nature of these proceedings, and thus its legitimacy. Mr. Ross's disqualification is required.

## IV.   CONCLUSION

For all of these reasons, the Court should disqualify Mr. Faillace's counsel from this case.

Respectfully submitted,

/s/ *Brian Lehman*
Brian Lehman
Lehman LG LLC
244 Fifth Ave., B258
New York, New York 10001
*Counsel for Defendants*

*All Counsel served by*
*CM/ECF*

---

[9] It is for good reason on September 24, 1789, Congress created the U.S. Marshalls in Section 27 of the Judiciary Act of 1789 at the same time it created this Court, the first federal district court, in Section 2. *See* 1 Stat. 73.

Exhibit 3

